***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has shown good grounds to reconsider the evidence and having reviewed the competent evidence of record, the Full Commission hereby reverses the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties through the Pre-trial Agreement and at the deputy commissioner hearing as
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. At all relevant times, the employee-employer relationship existed between the Plaintiff and the Defendant-employer.
3. Gallagher-Bassett Services, Inc. is the carrier for the employer.
4. Plaintiff contends that he has sustained a compensable injury to his shoulder arising out of and in the course of his employment, either as an injury by accident or occupational disease. Defendants deny that the claim is compensable and have not paid Plaintiff any benefits.
5. The parties submitted a set of stipulated medical records.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. Plaintiff was 46 years of age at the time of the deputy commissioner hearing, having a date of birth of October 28, 1954. He has been working for the Defendant-employer in the tire manufacturing plant in Wilson for 25 years. He started in stock cutting and then worked in tire assembly for over 20 years. Most recently he worked as PA table operator.
2. Plaintiff's testimony was to the effect that his work building tires was very strenuous and that his work caused him to exert a lot of pressure. Defendants produced testimony from plaintiff's supervisor and the senior safety officer to indicate that the work was not as strenuous as plaintiff claims and also produced a videotape, which depicts the majority of the plaintiff's duties. Even though the video-tape does not show stitching the tires, which was described as a strenuous activity, the duties shown were those performed about 80 percent of the time by plaintiff. Although the video-tape and other lay testimony contradict plaintiff's testimony concerning the physical stress of his position, the video-tape and other testimony supports plaintiff's assertion that his employment duties placed him at an increased risk for a shoulder injury, particularly a partial rotator cuff tear as is presented in this case.
3. Plaintiff testified that the production rates expected were 180 to 190 tires per 8 hour shift. The testimony of Buddy Lee Thorn, plaintiff's supervisor, which is found to be more accurate, showed that the production rates averaged 160 to 176 tires per shift. On average, as Mr. Thorn testified, plaintiff's production was around 140 to 145 tires per shift. Although the testimony is inconsistent concerning plaintiff's average rate of production and the Full Commission accepts the defendants' offered testimony to be more accurate, the Full Commission finds that even 140 to 145 tires per shift can place sufficient stress on the employee's shoulder that, over time, an injury similar to plaintiff's injury could develop.
4. On or about May 27, 1999, Plaintiff was working on a one-to-one tire building module. In this capacity, he took various components and assembled them into a finished raw tire. On this particular occasion, Plaintiff was performing his normal duties, and nothing unusual occurred. As he was working, stitching white sidewalls, he felt pain in his left shoulder.
5. On that same day, Plaintiff reported his shoulder pain to Buddy Thorn, and Mr. Thorn completed a medical pass for Plaintiff to seek treatment. Plaintiff was seen by a company nurse and then referred to Immediate Care in Wilson.
6. Plaintiff was seen that day at Immediate Care. Plaintiff had received treatment in the past at Immediate Care for carpal tunnel syndrome and had received treatment for numbness and weakness in his hands. On May 27, 1999, plaintiff complained of pain and discomfort in his left shoulder. Plaintiff was assessed with bilateral carpal tunnel syndrome and bursitis or tendonitis in his left shoulder. He was given an injection in his left shoulder, referred to an orthopaedic specialist, and given light duty.
7. Plaintiff came under the care of Dr. Robert Appert, an orthopaedic specialist who first saw him on June 8, 1999. Dr. Appert assessed Plaintiff with bilateral carpal tunnel syndrome and recommended a release on the left hand. The parties agree that this claim (966190) concerns plaintiff's left shoulder injury and does not include a separate claim for carpal tunnel syndrome.
8. Plaintiff was then examined by Dr. George S. Edwards, a hand specialist in Raleigh. Dr. Edwards performed carpal tunnel releases on both of Plaintiff's hands. Following his CTS surgeries, Plaintiff was moved from tire building to the pre-assembly (PA) table.
9. The primary treating physician for Plaintiff's left shoulder complaints was Dr. Deanna Boyette, who first saw him in February 1990. On that date, Dr. Boyette assessed a possible rotator cuff tear and gave Plaintiff an injection in his shoulder. Dr. Boyette ordered an MRI of the Plaintiff's shoulder and one of his neck. After reviewing these results, Dr. Boyette determined that diagnostic arthroscopic surgery was warranted for a partial rotator cuff tear.
10. On July 12, 2000, Dr. Boyette performed the diagnostic arthroscopy, which confirmed her pre-operative assessment. The procedure revealed some subacromial bursitis, and some partial thickness tearing of the rotator cuff. The rotator cuff, however, was not torn completely and was intact at the insertion into the femoral head.
11. Both Dr. Boyette and Dr. Appert testified in this case as to their opinions on the Plaintiff's left shoulder condition and the causes of the condition. In weighing this testimony, the Full Commission gives greater weight to the testimony of Dr. Boyette, who actually treated plaintiff for his shoulder condition than to that of Dr. Appert whose care did not center on this problem. Dr. Boyette had the opportunity to view the videotape of Plaintiff's duties, which demonstrated that the work was not as heavy or strenuous as Dr. Boyette had envisioned and as plaintiff and other employees from defendant-employer had described; however, Dr. Boyette confirmed that the work depicted in the video-tape was sufficiently strenuous such that over time it could cause a partial rotator cuff tear as seen in plaintiff. Dr. Boyette further testified that this position placed plaintiff at an increased risk, that shoulder injuries are characteristic of and peculiar to employee's at defendant's plant, and that based on her experience employees with similar duties as plaintiff at defendant-employer's business were more likely to receive shoulder injuries than the general population. The Full Commission finds Dr. Boyette's testimony to be competent to establish that plaintiff sustained an occupational disease in the course and scope of his employment.
12. Plaintiff had a pre-existing condition in his left shoulder, which is explained by Dr. Appert as Type III acromion, a condition in which the acromion is curved, instead of flat, where the rotator cuff slides under it. This condition is something the Plaintiff was born with and it predisposes him to develop tendonitis or bursitis. The greater weight of the competent evidence, however, is that repetitive strenuous work caused plaintiff to sustain a partial rotator cuff tear which is a distinctly different condition than plaintiff's congenital Type III acromion.
13. The greater weight of the evidence fails to show that Plaintiff sustained a specific injury to his shoulder due to an accident.
14. The issue presented to the deputy commissioner and the Full Commission in this case concerned the compensability of plaintiff's left shoulder injury. No competent evidence has been presented concerning plaintiff's wage rate and little evidence was presented concerning indemnity benefits, save for the testimony from plaintiff that his work duties were changed after the injury, that he was placed on light duty, and that he has only lost 2 or 3 days from work for the left shoulder. Plaintiff also testified that he would have surgery on his shoulder with Dr. Boyette and it is anticipated that some period of disability may result, or by now has resulted, from this procedure. Although not in the record, at oral argument counsel for plaintiff indicated that plaintiff did have surgery on his left shoulder by Dr. Boyette.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following
 CONCLUSIONS OF LAW
1. The evidence fails to establish that Plaintiff sustained an injury by accident arising out of and in the course of his employment with Defendant Bridgestone/Firestone on or about May 27, 1999. N.C.G.S. § 97-2(6). There is no competent evidence of an accident or untoward event which caused plaintiff's injury. The greater weight of the competent evidence is that plaintiff was performing his normal work activities.
2. The greater weight of the competent evidence establishes that Plaintiff's left shoulder condition is an occupational disease pursuant to N.C. Gen. Stat. § 97-53(13). See Booker v. Duke Medical Center,297 N.C. 458, 256 S.E.2d 189 (1979).
3. Plaintiff is entitled to receive medical care for his left shoulder and Dr. Boyette is approved as a treating physician for this condition. N.C.G.S. §§ 92-2(19), 97-25.
4. Plaintiff, at the time of the hearing before the deputy commissioner, had not yet established disability for seven calendar days, and thereby, through June 27, 2000, has not established entitlement for indemnity benefits for this injury. N.C.G.S. § 97-28. The issue of whether plaintiff has disability from his compensable injury after the June 27, 2000 hearing is not currently before the Commission and nothing in this opinion is intended to comment on the issue of disability after June 27, 2000, except that the issue remains open.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Plaintiff has sustained an occupational disease to his left shoulder which is compensable under the North Carolina Workers' Compensation Act.
2. Plaintiff is entitled to receive, and defendants are required to pay, for reasonable and necessary medical care for plaintiff's left shoulder condition, including treatment by Dr. Boyette.
3. Plaintiff has not established entitlement to indemnity benefits for the period from his date of injury, May 27, 1999, through June 27, 2000, the date of the hearing before the deputy commissioner. Should plaintiff contend that he has sustained more than seven days of disability after May 27, 1999, he is requested to provide the defendants with the period that he suggests that he is entitled to benefits under §§ 97-29 etseq. of the Act and his proposed calculations for his average weekly wage and compensation rate. Defendants are requested to file with the Commission and provide plaintiff with a Form 22, wage statement. Should the parties be unable to reach agreement as to whether plaintiff has sustained disability for his left shoulder injury, the period of disability, the wage/compensation rate, or other issue affecting benefits, they shall file a Form 33 and request a hearing on these issues.
4. Should plaintiff and defendants reach agreement concerning the payment of indemnity benefits, or should defendants pay indemnity benefits, counsel for plaintiff shall be entitled to receive one-fourth (1/4) of the accrued benefits paid and every fourth check of continuing benefits, if any, that are paid in this claim.
5. Defendants shall pay all costs of this proceeding including expert witness fees of $450 to Dr. Deanna Boyette and $450 to Dr. Robert Appert, if not previously paid by defendants.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER